UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PEDRO DOMINGUEZ,

        Plaintiff,

    v.

TOWN OF CICERO, et al.,

        Defendants.

No. 24 CV 5180

Judge Manish S. Shah

MEMORANDUM OPINION AND ORDER

Plaintiff Pedro Dominguez called 911 after he and his fiancé woke up to the sound of gunshots. Months later, Cicero Police Department officers arrested Dominguez and charged him with aggravated discharge of a firearm for those very shots. Defendant Cicero Detective Eduardo Diaz's positive identification of Dominguez in a video from the shooting contributed to defendant Cicero Detective Rosendo Lopez's decision to arrest Dominguez. The state dismissed all charges against Dominguez. Dominguez brings suit under 42 U.S.C. § 1983 against defendants Diaz and Lopez for false arrest. He also brings state-law malicious prosecution and intentional infliction of emotional distress claims against defendants Diaz, Lopez, and the Town of Cicero. Defendants move for summary judgment, and for the reasons discussed below, the motion is granted.

## I.    Legal Standards

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether summary judgment should be granted, I view all the facts and draw reasonable inferences in favor of the non-moving party. *See Sullivan v. Flora, Inc.*, 63 F.4th 1130, 1141 (7th Cir. 2023). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). I may consider materials that are in the record even if not cited by the parties. Fed. R. Civ. P. 56(c)(3).

## II. Facts

In October 2022, plaintiff Pedro Dominguez was living in a three-flat in Cicero, Illinois, with his fiancé. [39] ¶¶ 2–4.[1] On October 29, 2022, after hearing what sounded like gunshots outside his home shortly before 5 a.m., Dominguez called 911. [33] ¶ 5. Multiple officers from the Town of Cicero Police Department arrived and discovered bullet shell casings in front of Dominguez's building. [33] ¶ 6. Detective Rosendo Lopez was assigned to investigate the shooting. [33] ¶ 8.

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except in the case of citations to depositions, which use the deposition transcript's original page and line numbers. Citations to video recordings use the minutes and seconds according to the digital file uploaded to the docket. The facts are largely taken from the parties' responses to their adversary's Local Rule 56.1 statement of facts, [33] and [39], where both the asserted fact and the opposing party's response are set forth in one document. Any asserted fact that is not controverted by reference to specific, admissible evidence is deemed admitted. N.D. Ill. Local R. 56.1(e)(3); *see Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009).

As part of the investigation, officers spoke with plaintiff and another resident of his building, and they collected video recordings from a police observation device (POD) and neighborhood surveillance cameras. [33] ¶ 9. The POD footage depicts plaintiff's block, including from an angle showing the front steps of his residence. [33] ¶ 10. The parties do not dispute that the footage depicts a man standing by his car and apparently flashing gang signs when a muzzle flashes, causing the man to run back to his vehicle. [33] ¶ 11. The police discovered multiple bullet shell casings in front of plaintiff's residence. [33] ¶ 6.

The POD footage also shows a man standing on the front steps of plaintiff's residence at the time of the muzzle flashes. [33] ¶ 10. After the muzzle flashes and the target drives away, this man enters plaintiff's building. [33] ¶ 10. No other person enters the frame during the relevant time period. [33] ¶ 10. The footage shows the alleged shooter wearing a red shirt; when officers questioned plaintiff at the scene a few minutes after the shooting, he was wearing a gray shirt. [39] ¶ 26.

The parties dispute whether the POD video is clear enough to make an identification, but it is undisputed that defendant Lopez asked other detectives to help review the footage. [33] ¶¶ 12, 14. Lopez asked detectives Eduardo Diaz and Jesus Jimenez to review the POD footage; they had both previously arrested plaintiff. [39] ¶ 9.[2] Both Diaz and Jimenez had multiple unofficial and official encounters with

---

[2] The parties dispute the admissibility and relevance of Lopez's reason for asking Diaz and Jimenez to review the footage. [33] ¶ 9. Lopez's subjective motive is irrelevant to the objective inquiry of whether Diaz and Jimenez could reasonably identify plaintiff from the POD footage. The footage and the parties' undisputed description of it provides the basis to decide whether an objective, reasonably prudent officer could rely on Diaz's and Jimenez's

plaintiff before and after the shooting and knew where he lived. [33] ¶ 18. On June 29 and June 30, 2023, the detectives reviewed the footage as part of the investigation into the shooting and reported that plaintiff was the shooter. [33] ¶¶ 15, 17.[3] The next day, officers arrived at plaintiff's home and took him into custody. [33] ¶ 23.

Defendant Lopez signed a criminal complaint against plaintiff for aggravated discharge of a firearm. [33] ¶ 29. Plaintiff was held until his court appearance on July 3, 2023, at which time he was released on bond. [33] ¶ 30. One month later, a grand jury voted a true bill and indicted Dominguez. [33] ¶ 31. In April 2024, the trial court dismissed the criminal case after the state requested *nolle prosequi*. [33] ¶ 32. Plaintiff does not know why the case was dismissed. [33] ¶ 32. The incident caused Dominguez embarrassment, made him wary of the police, and hurt his reputation. [33] ¶ 33.

Plaintiff brings a claim for false arrest under 42 U.S.C. § 1983 against detectives Diaz and Lopez. [1] ¶¶ 18–20. He also brings state-law malicious prosecution and intentional infliction of emotional distress claims against the detectives and the Town of Cicero. [1] ¶¶ 21–29.

---

identification. *See generally Hart v. Mannina*, 798 F.3d 578, 591 (7th Cir. 2015) ("The question under the Fourth Amendment is whether the officer reasonably believed the witness was telling the truth.").

[3] According to defendant Diaz, he recognized plaintiff by his height, weight, hair style, and residence, despite not being able to distinguish any facial features. [28-9] at 23:9–16.

4

### III.    Analysis

####    A.    Fourth Amendment and Malicious Prosecution

 "The existence of probable cause is a defense to both Fourth Amendment and malicious prosecution claims." *Washington v. City of Chicago*, 98 F.4th 860, 863 (7th Cir. 2024). The question of whether an arrest is supported by probable cause is typically a question of fact decided by the jury. *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 714 (7th Cir. 2013). But a court may make the determination at summary judgment when the underlying facts are undisputed. *Madero v. McGuinness*, 97 F.4th 516, 522 (7th Cir. 2024).

An officer has probable cause to arrest an individual when "the totality of the circumstances known to the officer at the time of the arrest would warrant a reasonable person in believing that the arrestee had committed … a crime." *Gutierrez v. Kermon*, 722 F.3d 1003, 1008 (7th Cir. 2013). The probable-cause standard is not a high bar and "inherently allows room for reasonable mistakes." *Id.*; *see also Kaley v. United States*, 571 U.S. 320, 338 (2014).

"The existence of probable cause … depends, in the first instance, on the elements of the predicate criminal offense(s) as defined by state law." *Abbott*, 705 F.3d at 715. Dominguez's theory of false arrest is that defendants did not have probable cause to arrest him for aggravated discharge of a firearm. Under Illinois law, a person commits aggravated discharge of a firearm when he knowingly or

5

intentionally discharges a firearm in the direction of another person or a vehicle he reasonably should know is occupied by a person. 720 ILCS 5/24-1.2(a)(2).[4]

Here, the undisputed facts establish that defendant Lopez had probable cause to arrest plaintiff for aggravated discharge of a firearm. First, the video footage depicts a man whose relative size and presence at plaintiff's address is consistent with an inference that the man was plaintiff (or at least is not so inconsistent with plaintiff's appearance so as to rule him out as a suspect). *See* [33] ¶ 10. Plaintiff argues that none of the relied-upon footage in this case is clear enough to make a positive identification. [35] at 6. But while indistinct footage alone—relied upon by individuals lacking any familiarity with the suspect—may not be enough to establish probable cause, *see, e.g.*, *Clayborne v. Brown*, 2023 WL 2581296, at *2 (C.D. Ill. Mar. 20, 2023), plaintiff overlooks the other facts supporting a finding of probable cause in this case.

For one, the POD footage shows the suspect entering plaintiff's building after the muzzle flashes. [33] ¶ 10. Though Dominguez was not the only person living in the three-flat, suspecting him was not unreasonable. It is undisputed that Dominguez was home at the time of the shooting. [33] ¶ 5. Footage recovered from a neighbor's video camera depicts Dominguez walking around the building shortly after the shooting. [36]. Most importantly—and in contrast to the cases cited by plaintiff—

---

[4] The parties agree that the POD footage depicts muzzle flashes and a startled person, who had flashed gang signs, standing near a car. [33] ¶ 11. Plaintiff does not dispute the existence of probable cause for aggravated discharge of a firearm, but rather whether the officers had probable cause to believe Dominguez committed it. [35] at 5–8.

Dominguez was identified in the videos by people with sufficient personal knowledge of his appearance. [33] ¶ 14; [39] ¶ 9.

Plaintiff's argument challenging defendant Diaz's level of familiarity is unpersuasive. Failing to know whether an individual has tattoos is meaningfully different from recognizing an individual's overall physical appearance. [35] at 7. It is reasonable that an officer familiar with Dominguez from a past arrest would be able to recognize him in the POD footage, even if he could not distinguish particular facial features. Moreover, the difference in shirt color between plaintiff and the suspect in the video does not defeat probable cause where he would have had enough time to change shirts between the time of the shooting and the arrival of the police.[5]

Plaintiff argues that his neighbor, Alfredo Nunez, could just as likely have been the shooter depicted in the POD footage. [35] at 4. But while Nunez's relative size and residence could make him a suspect, the possibility of an alternative suspect does not make it unreasonable for defendants to arrest plaintiff based on the totality of evidence known to them at the time. *See, e.g.*, *Kermon*, 722 F.3d at 1008. Once detectives have assembled sufficient information to establish probable cause, they are not required to continue searching for additional evidence. *Driebel v. City of Milwaukee*, 298 F.3d 622, 643–44 (7th Cir. 2002).

---

[5] *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006 (7th Cir. 2006), cited by plaintiff ([35] at 7), is different. In *Sornberger*, the individual in the relied-upon footage did not "even come close to matching" the plaintiff's physical description and a witness who knew the plaintiff told the police that the suspect did not resemble the plaintiff. 434 F.3d at 1014. Here, in contrast, no witness told the police that the man didn't look like Dominguez, and the footage did not exclude plaintiff from suspicion.

The undisputed material facts preclude a § 1983 claim against defendant Diaz. His past encounters with Dominguez paired with his review of the POD footage make his identification reasonable to support the low bar for probable cause, as a matter of law. *See Bailey v. City of Chicago*, 779 F.3d 689, 695 (7th Cir. 2015) (noting that familiarity between a witness and suspect gives credibility to the witness's identification and counters concerns about the quality of a video). There is nothing in the record to suggest that Diaz fabricated evidence or was motivated to lie. Nor is there anything to suggest that it was unreasonable for defendant Lopez to credit Diaz's and Jimenez's identifications after his own review of the body camera footage of plaintiff from a few minutes after the shooting.

And, even if probable cause were lacking, qualified immunity shields the officers from liability. "Arguable probable cause is different from probable cause in that it applies where officers had a reasonable but mistaken belief that probable cause existed." *Neita v. City of Chicago*, 148 F.4th 916, 933 (7th Cir. 2025) (emphasis in original). Even if it were a mistake to believe that the POD footage resembled Dominguez, nothing in the record suggests that no reasonable officer who knew Dominguez from past encounters could make the same mistake. According to Lopez, the State's Attorney's Office advised him that Diaz's and Jimenez's identifications met the prosecutor's standard to approve felony charges. [28-5] at 40:14–17. The prosecutor's advice may have come after plaintiff's seizure, and likely was not based on an independent comparison of the POD footage and known footage of Dominguez. But Lopez's understanding that the identification procedure used in his investigation

8

comported with the prosecutor's felony review standards further supports the reasonableness of any mistaken identification. *See Kijonka v. Seitzinger*, 363 F.3d 645, 648 (7th Cir. 2004) (consulting a prosecutor goes far to establish qualified immunity). Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. *Johnson v. Edwards*, No. 24-1503, 2026 WL 204353, at *3 (7th Cir. Jan. 27, 2026) (quotation and citation omitted). Here, plaintiff points to no case that clearly establishes that an identification based on personal knowledge of a suspect and a comparison to an otherwise not definitive video is unreasonable.

Dominguez's state-law claim for malicious prosecution against the detectives and the Town of Cicero fails for the same reason that his Fourth Amendment claim fails—the officers had probable cause to arrest him. *Young v. City of Chicago*, 987 F.3d 641, 646 (7th Cir. 2021) ("To state a claim for malicious prosecution under Illinois law, a plaintiff must allege that: (1) he was subjected to judicial proceedings; (2) for which there was no probable cause ….").[6]

### B. Intentional Infliction of Emotional Distress

Under Illinois law, a claim for intentional infliction of emotional distress requires proof that (1) the conduct involved was extreme and outrageous; (2) the actor intended (or knew there was a high probability) that his conduct would inflict severe

---

[6] Defendants further argue that summary judgment is appropriate on the malicious prosecution claim because the *nolle prosequi* order does not constitute a termination of the proceeding in favor of plaintiff. [27] at 8. A bare *nolle prosequi* order is not enough to suggest the requisite favorable termination. *Lund v. City of Rockford, Ill.*, 956 F.3d 938, 949 (7th Cir. 2020). But here, in moving to dismiss the charge, the State's Attorney said, "in review of the evidence, motion State nolle pros." [28-19] at 3. Drawing inferences in plaintiff's favor, that suffices to suggest that the prosecutor lacked reasonable grounds to pursue the criminal prosecution.

emotional distress; and (3) the conduct in fact caused severe emotional distress. *Cairel v. Alderden*, 821 F.3d 823, 835 (7th Cir. 2016). Unlike a malicious prosecution claim, the absence of probable cause is not itself a requisite of an intentional infliction of emotion distress claim. But the existence of probable cause is strong evidence that a defendant's conduct was not extreme and outrageous. *See Stokes v. Bd. of Educ. of the City of Chicago*, 599 F.3d 617, 636 (7th Cir. 2010); *McDade v. Stacker*, 106 Fed. App'x 471, 476 (7th Cir. 2004).

Even when the facts are taken in the light most favorable to Dominguez, defendants' actions to secure his arrest were not extreme and outrageous. As discussed above, I find that both defendant Diaz and defendant Lopez acted reasonably in the given circumstances. Lopez took several steps to investigate the incident: he twice attempted to question other residents of plaintiff's building, [28-5] at 50:14–17, he reviewed the POD camera footage "countless" times, [28-5] at 35:11–19, and he identified who he believed to be the target of the shooting. [33] ¶ 11. These steps establish a course of action that was a far cry from an extreme and outrageous rush to judgment.

Extreme conduct must go beyond all bounds of decency and be considered intolerable in a civilized community. *Feltmeier v. Feltmeier*, 207 Ill.2d 263, 274 (2003). Plaintiff's arrest was based on video footage, his presence at the time of the shooting, and reasonable identifications. In the absence of extreme conduct, defendants are entitled to judgment on plaintiff's intentional infliction of emotional distress claim,

notwithstanding the embarrassment Dominguez experienced from the arrest in front of his friends and family.

With summary judgment in favor of defendants Diaz and Lopez, summary judgment is also appropriate with respect to the Town of Cicero. Where defendant officers are not liable to plaintiff on his state-law claims, the municipality similarly cannot be held liable under a theory of *respondeat superior*. *See, e.g.*, *McGreal v. AT&T Corp.*, 892 F.Supp.2d 996, 1018 (N.D. Ill. 2012).

## IV. Conclusion

Defendants' motion for summary judgment, [26], is granted. Enter judgment in favor of defendants and terminate civil case.

ENTER:

Manish S. Shah
United States District Judge

Date: February 9, 2026

11